UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| George Burns | | Kevin Gill |

**Proceedings:** **DEFENDANT'S MOTION TO RECUSE PLAINTIFF'S COUNSEL, TO STRIKE, AND TO DISMISS** (filed 12/06/10)

## I. INTRODUCTION

On November 10, 2010, plaintiff Synod of Southern California and Hawaii filed suit against Certain Underwriters at Lloyd's, London ("Underwriters"), and Does 1 through 10, inclusive, alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

On December 6, 2010, Underwriters filed the instant motion to recuse plaintiff's counsel, to strike portions of plaintiff's complaint, and to dismiss. On December 13, 2010, plaintiff filed an opposition. Underwriters replied on December 20, 2010.[1] After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. FACTUAL BACKGROUND

On June 1, 2004, Underwriters issued a package of insurance policies identified as policy no. LU0434455 (the "Policy") to the Covenant Presbytery Insurance Program and

---

[1] Also on December 20, 2010, Underwriters filed an objection and motion to strike certain portions the Declaration of Kay Gustafson. The Court denies as moot Underwriters' objection and motion to strike certain portions of the Gustafson Declaration because the Court does not rely on the evidence to which those objections address.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

its enrolled members. Complaint ¶ 34. The Policy issued by Underwriters contained a "Not-for-Profit Social Services Agency and Religious Purpose Organization Professional Liability Insurance Policy" (the "Professional Liability Policy"). Complaint ¶ 36. Plaintiff is an intermediary entity within the Presbyterian Church, USA ("PCUSA"), and has authority over all of the presbyteries within its specific geographic region. Complaint ¶ 13. Plaintiff is an additional insured under the Policy. Complaint ¶ 34.

In early 2005, a dispute arose between plaintiff and a faction of a local PCUSA church, Torrance First Presbyterian Church ("Torrance"), which declared that it had voted to secede from the jurisdiction of PCUSA. Complaint ¶¶ 11, 15, 16. On April 20, 2005, Torrance filed an action against plaintiff alleging that plaintiff wrongfully asserted control over Torrance by appointing a regional commission to attempt to eject the Torrance board of directors. Complaint ¶¶ 11, 15, 16. On April 22, 2005, plaintiff tendered the defense of the Torrance matter to Underwriters, and retained the Law Offices of George S. Burns ("Burns") to defend itself in the action. Complaint ¶ 43. On April 26, 2005, plaintiff answered the Torrance complaint and filed a cross complaint seeking relief arising out of the same allegations as those in the Torrance complaint. Complaint ¶¶ 21, 22.

On September 30, 2005, after completing a claims investigation, Underwriters accepted tender of the Torrance matter and agreed to provide a defense to plaintiff. Complaint ¶ 44. Plaintiff alleges that Underwriters characterized Torrance's complaint as "potentially covered" by the Policy because Torrance alleged that plaintiff had committed:

> an allegedly purportedly wrongful assertion of control, right to control, or other interest in property [Torrance] claim[s] is theirs exclusively. These assertions appear to fall under an allegation of error or misleading statement, or both, and thus appear to allege wrongful acts as that term is defined [in the Policy].

Complaint ¶ 44. Underwriters' coverage decision specified that coverage was not extended to plaintiff's pursuit of its cross complaint. The coverage decision stated:

> . . . please be advised that this coverage determination applies to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

> costs of defense only, as those costs are defined in the Policy.
> Underwriters understand that the insureds have filed a cross-complaint, which is not covered under the coverage determination outlined here. Kindly have defense counsel maintain strict separation of the fees, costs and expenses incurred in the defense of the matter, and in prosecuting the cross-complaint. Underwriters retains the right to determine whether the fees, costs and expenses incurred are reasonable, and to provide for the fees, costs and expenses it deems reasonably related to the defense described above.

Declaration of Jeffrey Wilkes ("Wilkes Decl."), Ex. C at 6. Underwriters' coverage decision further stated:

> Please also be aware that Underwriters reserves the right under the terms of the Policy to appoint defense counsel of its own choosing should Underwriters deem it necessary. Further, any future such claims, or similar claims by any entity should be tendered to Underwriters at the earliest opportunity, such that Underwriters may choose defense counsel as the Policy so provides. . . .
> Underwriters reserve the right to deny, reject, or decline coverage on any claim made under the above-referenced policy.

Wilkes Decl., Ex. C at 6–7.

In May 2006, individuals claiming to be the board of directors of Torrance (its "session"), filed a cross complaint against plaintiff in the Torrance litigation (the "Session's Cross Complaint"). Complaint ¶ 24. Plaintiff alleges that the Session's Cross Complaint accused plaintiff of engaging in fraudulent conduct. Complaint ¶¶ 25–26. Plaintiff alleges that it tendered the defense of the Session's Cross Complaint to Underwriters, that Underwriters acknowledged receipt of the tender, but failed to either accept or reject the tender. Complaint ¶ 46.

Plaintiff alleges that Underwriters reimbursed it for most of its attorney's fees and expenses pertaining to the Torrance litigation through August 2006. Complaint ¶¶ 45, 47. Plaintiff alleges that after October 2006, Underwriters stopped paying plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

defense costs without explanation, and never withdrew its acceptance of plaintiff's defense. Complaint ¶ 47. Plaintiff alleges that it continued to request payment from Underwriters, but that Underwriters either ignored plaintiff's requests or replied that Underwriters required more information about the Torrance litigation. Complaint ¶ 48. Plaintiff alleges that during this time, plaintiff paid all attorney's fees and expenses incurred in the defense of the Torrance litigation in an amount exceeding $800,000. Complaint ¶ 48. Plaintiff alleges that on July 9, 2010, after nearly four years of inquiry with Underwriters regarding the Torrance litigation, Underwriters informed plaintiff that it had satisfied its obligation to defend plaintiff and had no further obligation to either reimburse plaintiff for defense costs or to defend plaintiff in the Torrance litigation. Complaint ¶ 49. Thereafter, plaintiff filed this suit asserting claims against Underwriters for breach of contract and breach of the implied covenant of good faith and fair dealing.

### III. DISCUSSION

#### A. Motion to Recuse

Underwriters contends that the Law Offices of George S. Burns ("Burns") must be disqualified as counsel for plaintiff because Burns owes a duty of loyalty to Underwriters arising from the Torrance litigation. Mot. at 9.

The procedure to disqualify counsel for a conflict of interest is a motion to disqualify or "recuse" counsel, and such motions are decided under state law. In re County of Los Angeles, 223 F.3d 990, 994 (9th Cir. 2000); L.R. 83-3.1.2 (adopting California's standards of professional conduct and providing that the American Bar Association's Model Rules of Professional Conduct may be considered as guidance). Whether counsel must be disqualified "ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process." Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., 36 Cal. App. 4th 1832, 1838 (1995) (quoting In re Complex Asbestos Litig., 232 Cal. App. 3d 572, 585 (1991)).

#### 1. Standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

Underwriters argues that it has standing to bring a motion to disqualify plaintiff's counsel because when Underwriters agreed to Burns's service as defense counsel in the Torrance litigation, an attorney-client relationship was formed between Burns and Underwriters. Mot. at 10.

A disqualifying conflict of interest will not exist in the absence of an attorney-client relationship. Koo v. Rubio's Rests., Inc., 109 Cal. App. 4th 719, 729 (2003). Thus, Underwriters does not have standing to disqualify Burns unless Underwriters can establish that there was an attorney-client relationship between Burns and Underwriters. In California, the general rule is that "[i]n the absence of a conflict of interest between the insurer and the insured that would preclude an attorney from representing both, the attorney has a dual attorney-client relationship with the insurer and the insured." State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 72 Cal. App. 4th 1422, 1429 (1999). Generally, an insurer owing a duty to defend to an insured has the right to control the defense and settlement of the third party action against its insured, and is a direct participant in the litigation. Long v. Century Indem. Co., 163 Cal. App. 4th 1460, 1468 (2008). In most circumstances, the insurer hires defense counsel who represents the interests of both the insurer and the insured. Id. This tripartite relationship creates a "coalition for a common purpose, a favorable disposition of the claim – with the attorney owing duties to both clients." Purdy v. Pac. Auto. Ins. Co., 157 Cal. App. 3d 59, 76 (1984); see also San Diego Federal Credit Union v. Cumis Ins. Soc'y, Inc., 162 Cal. App. 3d 358, 364 (1984) (in the "usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same.").

"Under certain circumstances, however, a conflict of interest or potential conflict of interest may impose upon the insurer a duty under [Cal. Civil Code] section 2860 to provide independent counsel, commonly referred to as 'Cumis counsel,' for the insured."[2] Long, 163 Cal. App. 4th 1468. Under most circumstances, these conflicts involve the

---

[2] In Cumis, the Court recognized the insurer's duty to provide independent counsel to its insured under certain circumstances, hence the term "Cumis counsel." Cumis, 162 Cal. App. 3d at 358. Cumis has been superseded by California Civil Code section 2860.

Case 2:10-cv-08581-CAS-E   Document 23   Filed 01/03/11   Page 6 of 18   Page ID #:536

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA      O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

insurer trying to avoid coverage while the insured is trying to obtain it. Id. (citing Assurance Co. v. Haven, 32 Cal. App. 4th 78, 84 (1995)). In order to protect the insured's interests, and to "eliminate the ethical dilemmas and temptations that arise along with conflict in joint representations," the insurer is obligated to provide the insured with independent counsel of the insured's choice "who represents the insured, not the insurer." Long, 163 Cal. App. 4th at 1469 (internal quotations omitted).

A conflict requiring appointment of Cumis counsel exists when (1) an insurer reserves its rights on a given coverage issue, and (2) the outcome of that coverage issue can be controlled by counsel first retained by the insurer for defense of the claim. Cal. Civil Code § 2860(b); Long, 163 Cal. App. 4th at 1470. An insurer's agreement to provide a defense pursuant to a reservation of rights does not automatically require appointment of Cumis counsel. Long, 163 Cal. App. 4th at 1470. Where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the third party action, there is no conflict of interest requiring the appointment of Cumis counsel. Id. However, when the resolution of an issue in the underlying lawsuit between the third party and the insured will bear directly on the outcome of the coverage dispute between the insurer and the insured, the insurer is required to provide the insured independent counsel. Id. at 1471. "Simply put, the question is whether the *manner* in which the liability action is defended can *predetermine the outcome* of any subsequent coverage determination." Croskey et al., California Practice Guide: Insurance Litigation, ¶ 7:774 (Rutter 2010) (emphasis in original).

Here, Underwriters argues that coverage was not contingent on the outcome of the Torrance litigation, and therefore Burns was not independent Cumis counsel. Mot. at 13. Underwriters contends that the complaint's characterization of its coverage decision as provisional is contradicted by the terms of the actual coverage decision letter, which make clear that Underwriters interpreted the Policy as providing coverage for plaintiff's defense in the Torrance litigation, and contained only a general reservation of rights. Id. at 13–15 (citing Complaint ¶ 44; Wilkes Decl., Ex. C). Underwriters argues that its general reservations as to unknown contingencies did not create a disqualifying conflict that would abrogate the usual tripartite attorney-client-client relationship. Id. at 16–17.

Underwriters contends that the fact that it refused to fund plaintiff's counterclaims does not change the analysis. Id. at 17. Underwriters asserts that California courts have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

already ruled that the fact that an insurer refuses to fund counterclaims for affirmative relief in its defense of an action against its insured does not entitle the insured to independent Cumis counsel. Id. (citing James 3 Corp. v. Truck Ins. Exch., 91 Cal. App. 4th 1093, 1104–05 (2001) (holding that absent a contractual obligation to do so, an insurer's decision to decline to file a counterclaim "provides no basis for the appointment of independent counsel for the insureds.")).

Underwriters further asserts that the fact that plaintiff first retained Burns does not divest Underwriters of its status as Burns's client. Id. at 10–11. Relying upon Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 79 Cal. App. 4th 114, 125–28 (2000), Underwriters argues that even if it never entered into a formal contract with Burns, and did not make payments directly to Burns, an attorney-client-client relationship was still formed among Burns, Underwriters and plaintiff. Id. at 11–13.

In Berger Kahn, an insurer for companies which offered and administered a legal services plan brought a malpractice action against a law firm. Berger Kahn, 79 Cal. App. 4th at 125–28. The insurer sued the law firm after it was forced to settle the underlying action due to the alleged lack of preparation by the attorneys in the law firm. Id. at 122–23. The law firm argued that the insurer lacked standing to sue them because defendants first hired the law firm, defendants had a preexisting relationship with the law firm, and defendants were the only ones to pay the firm's legal fees. Id. at 125–26. The Court of Appeal reversed summary judgment in favor of the attorneys, and found that the insurer had standing to sue the law firm on the grounds that an attorney-client relationship had formed between the law firm and the insurer. Id. at 126–27. In rejecting the law firm's argument, the Court of Appeal held:

> [The law firm's] argument is fatally flawed, resting as it does on the implicit assumption that as between the insurer and the insured, only one can establish an attorney-client relationship with the insured's defense attorney, and that that relationship is established only by the first to contact that counsel. This belies the tripartite relationship that exists between the insurer, the insured and counsel defending the insured. Properly characterized, the issue presented is not who initially selected and retained the defense attorney but with whom the attorney-client relationship was established.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

      In determining whether an attorney-client relationship has been established, several guiding principles are applicable. It is elementary that the relationship between a client and his retained (or noncourt-appointed) counsel arises from a contract, whether written or oral, implied or expressed. An attorney-client relationship can be formed though no retainer is signed or no fees are paid. When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie. The absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising. Contractual formality is not required.

      Properly analyzed, it is clear that the Berger Kahn defendants were counsel for both the Plan defendants and Gulf. Although the Plan defendants first contacted and retained Berger Kahn with regard to the Coleman Action, they clearly did so with the understanding that they had to select counsel acceptable to Gulf. Nothing in the facts presented suggests that the Plan defendants believed that they could have, or would have, insisted on the use of that firm over Gulf's objection. Their tender to Gulf, advising of their selection of Berger Kahn, reflected their sensitivity to Gulf's interests, by their statement that "we understand that they Berger Kahn were recently added to your list of 'Approved Counsel.' " Gulf also understood that selection of counsel for its insureds was its prerogative as [the claims administrator's] correspondence asserted Gulf's right to give approval and condition that approval on Berger Kahn's adherence to Gulf's defense guidelines. Gulf required the Berger Kahn defendants to provide it with a budget for the defense of the Coleman Action and a report of the exposure, settlement posture and needed discovery and research and related matters, all confidential attorney-client or work product information to which Gulf would not have been entitled absent an attorney-client relationship with Berger Kahn. Berger Kahn signed the defense guidelines, reflecting its agreement to those terms, even negotiating an increase in the hourly rates at which it would be compensated.

Berger Kahn, 79 Cal. App. 4th at 126–27 (internal quotation marks and citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

Analogizing to Berger Kahn, Underwriters maintains that the fact that plaintiff had a preexisting attorney-client relationship with Burns, or that plaintiff retained Burns prior to tendering the claim to Underwriters, did not prevent the tripartite relationship from arising once Underwriters accepted defense of the Torrance litigation and approved plaintiff's choice of counsel. Mot. at 12–13. Moreover, Underwriters argues that the facts do not suggest that Burns was solely plaintiff's counsel because plaintiff never demanded Cumis counsel and never claimed that there was a conflict of interest between plaintiff and Underwriters. Id. at 13.

Plaintiff responds that Burns was Cumis counsel because Underwriters expressly provided a "defense only" and reserved all its rights to "deny, reject or decline coverage." Opp'n at 9. Plaintiff further asserts that Cumis counsel was necessary because the underlying claims of internal misconduct contained in the Session's Cross Complaint would have impacted Underwriters' ultimate coverage determination since the Policy does not provide coverage for fraud. Id. Plaintiff also points out that it never executed a form waiving its right to independent counsel as required by Cal. Civ. Code § 2860(e). Id. Plaintiff also argues that as the party seeking to prove the existence of an attorney-client relationship, Underwriters bears the burden of presenting evidence of mutual intent to enter into an attorney-client relationship. Opp'n at 7 (citing Zenith Ins. v. Cozen, 148 Cal. App. 4th 998, 1000–01 (2007)). Plaintiff argues that there is no such evidence in this case because plaintiff hired Burns, and Underwriters never entered into a contract with Burns. Id. at 8.

Plaintiff contends that Berger Kahn is distinguishable because in that case, the law firm had a direct contract with the insurer, and was one of the firms on the insurer's list of "approved counsel." Id. at 10 (citing Berger Kahn, 79 Cal. App. 4th at 121, 126–27). Moreover, plaintiff observes that in Berger Kahn, the insurer conditioned the selection of the law firm on reaching an agreement with the insurer regarding the terms of representation, and subsequently the insurer and the law firm negotiated and executed a retainer agreement. Id. at 10–11 (citing Berger Kahn, 79 Cal. App. 4th at 121–22, 127). Plaintiff argues that unlike Berger Kahn, Burns never signed an engagement agreement with Underwriters and the coverage decision letter issued by Underwriters specifically reserved its right to appoint defense counsel of Underwriters' choosing. Id. at 11.

Thus, plaintiff asserts that Berger Kahn is inapposite and that this case is more like

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

Emp'rs Ins. of Wausau v. Albert D. Seeno Constr. Co., 692 F. Supp. 1150, 1152–58 (N.D. Cal. 1988). Opp'n at 11–12. In Wausau, an insurer filed an action seeking a declaration that it was not liable for third party claims alleging faulty work by its insured, a home construction firm and developer. Wausau, 692 F. Supp. at 1152–53. Both parties brought motions to disqualify counsel based on alleged breaches of ethical duties in the Cumis context. Id. at 1153. The court held that under California law, Cumis counsel engaged by the insured and paid for by the insurer do not owe ethical duties to the insurer. Id. at 1157–58. Relying upon Wausau, plaintiff argues that an attorney-client relationship never formed between Burns and Underwriters. Opp'n at 11.

 Underwriters replies that it never had an obligation to appoint Cumis counsel because the original complaint tendered in the Torrance litigation contained claims for declaratory and injunctive relief, and did not assert any claims related to wilful misconduct. Reply at 5 (citing Declaration of George S. Burns ("Burns Decl.), Ex. 1). Underwriters asserts that the only applicable exclusion in the Policy is for the commission of a "criminal, fraudulent, dishonest or malicious Wrongful act," not for all claims of intentional conduct. Id. (citing Wilkes Decl., Ex. A at 84). Underwriters asserts that it is irrelevant if the Session's Cross Complaint contained claims that may have given rise to a conflict of interest because the question is whether there was a conflict at the outset of the Torrance litigation that precluded Burns from representing both plaintiff and Underwriters. Id. (citing State Farm Mut. Auto. Ins. Co., 72 Cal. App. at 1429). Underwriters contends that if a conflict arose after the tripartite relationship formed, Burns had an obligation to bring the conflict to the attention of both parties and seek permission from each to continue. Id.

 Underwriters further replies that it has no obligation to present evidence of mutual intent to enter into a contract with Burns because the tripartite relationship was formed as a matter of law once Underwriters accepted plaintiff's tender and approved plaintiff's choice of counsel. Id. (citing Berger Kahn, 79 Cal. App. 4th at 125–28). Furthermore, Underwriters argues that Cozen does not speak to the formation of the primary tripartite relationship between counsel, insured and insurer because that case involves reinsurance and is not applicable to all insurance practice. Id. at 6–7. Underwriters contends that at most, Cozen stands for the proposition that, absent express agreement between reinsurer and reinsured's attorney, the attorney owes no duty of care to the reinsurer. Id. at 7 (citing Cozen, 148 Cal. App. 4th at 998). Finally, Underwriters argues that plaintiff's citation to Wausau is misplaced because that case involved an acknowledged Cumis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

situation where the insurer specifically reserved rights to deny coverage and filed an action seeking confirmation of no coverage. Id. (citing Wausau, 692 F. Supp. at 1152).

The Court concludes that Underwriters has standing to bring a motion to disqualify Burns because an attorney-client relationship was formed between Burns and Underwriters. The Court finds that the original complaint in the Torrance litigation did not present a potential conflict of interest obligating Underwriters to appoint independent Cumis counsel. Underwriters' provision of a defense pursuant to a general reservation of rights, did not automatically create a conflict of interest requiring Underwriters to appoint independent counsel. Long, 163 Cal. App. 4th at 1470. Underwriters' coverage decision indicates that it undertook defense of the entire Torrance action, and, as in Berger Kahn, only asserted a general reservation of rights to "protect[] against unknown eventualities which might subsequently arise." Berger Kahn, 79 Cal. App. 4th at 131; see Wilkes Decl., Ex. C at 4–6 (explaining that the Policy provides a defense for the allegations in the Torrance complaint, and including a general reservation of Underwriters' "right to deny, reject, or decline coverage on any claim made under the . . . policy.").[3] Furthermore, the allegations in the Torrance complaint did not require the resolution of an issue that could directly influence the outcome of a subsequent coverage determination. See Long, 163 Cal. App. 4th at 1471. The Torrance complaint asserted claims for declaratory and injunctive relief, and did not allege wilful misconduct or other conduct that, if proven, would be excluded from coverage under the Policy. See Burns Decl., Ex. 1; Wilkes Decl., Ex. C at 1 ("Underwriters understands that this matter involves a tender of defense only, and that no indemnity is currently requested, nor does it appear that the complaint in the matter would give rise to any indemnity issues.").

The Court further finds that Underwriters has met its burden of establishing that an attorney-client relationship was formed between Burns and Underwriters in September 2005, when Underwriters issued a coverage letter accepting plaintiff's selection of Burns as counsel. See Wilkes Decl., Ex. C at 6 ("As noted above, the insureds had already engaged defense counsel at the time the claim was tendered. Herein, Underwriters

---

[3] Similarly, Underwriters' provision of a "defense only" and refusal to fund plaintiff's counterclaims did not obligate Underwriters to appoint Cumis counsel. See James 3 Corp., 91 Cal. App. 4th at 1104–05.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

confirms that it will furnish the 'reasonable fees, costs, and expenses incurred by or consented to by Underwriters in the investigation, defense and appeal' of the matter."). Because the original complaint tendered to Underwriters presented no conflict of interest that precluded Burns from representing both plaintiffs and Underwriters, Burns had a dual attorney-client relationship with both.  See State Farm Mut. Auto. Ins. Co., 72 Cal. App. 4th at 1429.  Furthermore, the fact that plaintiff had a preexisting relationship with Burns, or that plaintiff first hired Burns, did not preclude the tripartite attorney-client-client relationship from arising upon Underwriters' acceptance of defense.  See Berger Kahn, 79 Cal. App. 4th at 126–27.[4]

Moreover, contrary to plaintiff's argument, there is no basis for finding that an attorney-client relationship never existed between Burns and Underwriters on the grounds that the Sessions Cross Complaint presented a potential conflict of interest.  The Session's Cross Complaint – which purportedly alleged wrongful and fraudulent misconduct by plaintiff – was filed in May 2006, over seven months after the tripartite relationship had been formed among Burns, plaintiff and Underwriters.  As Underwriters points out, if the Sessions Cross Complaint presented a conflict requiring the appointment of Cumis counsel, Burns should have brought the conflict to the attention of plaintiff and Underwriters and sought permission from each to continue.  See Croskey et al., California Practice Guide: Insurance Litigation, ¶ 7:844.3 (Rutter 2010) ("Where a

---

[4] Plaintiff's reliance on Wausau is unavailing.  In Wausau, the court presupposes the existence and necessity of Cumis counsel.  Thus, the only question presented in that case was whether, in a situation where Cumis counsel has already been appointed, an attorney-client relationship could be formed between the insured's counsel and the insurer.  See Wausau, 692 F. Supp. at 1155 (the issue presented is "whether Cumis counsel represent or owe duties to the insurer such that Cumis counsel cannot represent the insured in coverage disputes with the insurer."); see also id. at 1153 ("Both parties bring motions to disqualify based on alleged breaches of the duties of counsel in the Cumis context, i.e., where the insured has exercised its right to select independent counsel paid for by the insurer because a conflict or potential conflict has arisen between the insurer and the insured.").  Unlike Wausau, the issue presented in this case is whether the circumstances were such that the appointment of Burns as Cumis counsel was necessary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

potential conflict exists, it is counsel's responsibility to obtain the affected clients' informed written consent *before* accepting or continuing representation. Otherwise, disqualification . . . is likely.") (emphasis in original).

Accordingly, the Court finds that Underwriters has standing to bring a motion to disqualify Burns as plaintiff's counsel.

### 2. Duty of Loyalty

Underwriters maintains that Burns should be disqualified because his service as counsel to plaintiff will breach the duty of loyalty he owes to Underwriters. Mot at 18.

As discussed above, because the Central District of California has adopted California's Rules of Professional Conduct, California law governs whether there is an ethical violation. L.R. 83-3.1.2; Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009). California Rule of Professional Conduct 3-310 provides, in pertinent parts:

> (B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:
> . . .
>   (2) The member knows or reasonably should know that:
>       (a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and
>       (b) the previous relationship would substantially affect the member's representation; or
> . . .
>   (4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.
> (C) A member shall not, without the informed written consent of each client:
> . . .
>   (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.
> . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA  O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

 (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. Rules of Prof'l Conduct R. 3-310(B), (C) and (E).

 As discussed previously, Burns represented both Underwriters and plaintiff in the Torrance litigation. Burns again represents plaintiff in the instant action, however, plaintiff is now adverse to Underwriters. Because Burns previously represented Underwriters, Burns owes a duty of loyalty to Underwriters and is prohibited from serving as adverse counsel in this action by California Rule of Professional Conduct 3-310 unless both Underwriters and plaintiff supplied their informed written consent. See Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 815 (N.D. Cal. 2004). Because Underwriters has not given its consent, Burns must be disqualified as plaintiff's counsel.[5] Accordingly, the Court GRANTS Underwriters' motion to recuse plaintiff's counsel.[6]

 **B.** **Motion to Strike**

 Underwriters moves to strike paragraphs 17a through 23b, the second and third sentence of paragraph 24, paragraphs 26 through 28, the third sentence of paragraph 29,

---

 [5] The Court recognizes that Burns may have been entitled to pursue an action for attorney's fees against Underwriters pursuant California Business and Professions Code section 6201. In light of the fact, however, that Burns is representing plaintiff on a claim for breach of the implied covenant of good faith and fair dealing, seeking among other things punitive damages, the Court determines that disqualification in these circumstances is appropriate.

 [6] Underwriters maintains that Burns must also be disqualified pursuant to the advocate-witness rule because he will be required to testify in this case about his firm's activities in the Torrance litigation and his legal fees. Mot. at 20–21 (citing Cal. Rules of Prof'l Conduct R. 5-210). Because the Court concludes that Burns should be disqualified pursuant to Rule 3-310, the Court reserves judgment on whether Burns is also disqualified under Rule 5-210.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

paragraphs 29a through 29g, the third sentence of paragraph 31, paragraph 32, paragraphs 50 through 50n, and plaintiff's prayer for punitive damages from the complaint. Mot. at 21–24.

A motion to strike material from a pleading is made pursuant to Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent, or scandalous." A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The Court may also strike under Fed. R. Civ. P. 12(f) a prayer for relief which is not available as a matter of law. Tapley v. Lockwood Green Eng'rs, 502 F.2d 559, 560 (8th Cir. 1974). The essential function of a Fed. R. Civ. P. 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

> **1.     Paragraphs 17a through 23b, the Second and Third Sentence of Paragraph 24, Paragraphs 26 through 28, the Third Sentence of Paragraph 29, Paragraphs 29a through 29g, the Third Sentence of Paragraph 31, Paragraph 32, Paragraphs 50 through 50n**

Underwriters argues that the Court should strike paragraphs 17a through 23b, relating to plaintiff's cross complaint in the Torrance litigation, because they are irrelevant, immaterial and impertinent to the issues in dispute. Mot. at 22. Underwriters contends that the second and third sentence of paragraph 24, paragraphs 26 through 28, the third sentence of paragraph 29, paragraphs 29a through 29g, the third sentence of paragraph 31, and paragraph 32 should be striken because they are conclusory legal assertions about the meaning of the pleadings in the Torrance litigation. Id. at 22–23. Finally, Underwriters asserts that the Court should strike paragraphs 50 through 50n because they are conclusory assertions that do not relate to the claims investigation, but to Underwriters' efforts to control the litigation, and to the claim for additional attorney's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

fees. Id. at 23.

Plaintiff responds that the factual allegations in paragraph 17 show what it had to prove to prevail in the Torrance litigation, and therefore are relevant. Opp'n at 15. Plaintiff argues that the allegations in paragraphs 18 through 23b demonstrate that its cross complaint was "inextricably linked" to its defense in the Torrance litigation, and are relevant to show that Burns had no obligation to apportion his attorney's fees. Id. at 16 (citing Reynolds Metal Co. v. Alperson, 25 Cal. 3d 124, 129 (1979); California v. Pac. Indem., 63 Cal. App. 4th 1535, 1549 (1998)). Plaintiff further responds that the portions of paragraphs 24 and 28 that Underwriters seeks to strike describe the Session's Cross Complaint, and provide foundation for plaintiff's allegation that Underwriters breached the Policy when it failed to defend plaintiff against the cross complaint. Id. at 17. Plaintiff argues that paragraphs 29, 31, and 32 describe how it obtained a judgment in the Torrance litigation, and supply necessary background information. Id. at 17–18. Finally, plaintiff argues that the allegations in paragraph 50 describe Underwriters' claims investigation from May 16, 2006 to July 9, 2010, and are pertinent to the claims against Underwriters. Id. at 18.

The Court finds that Underwriters' motion to strike is without merit. The portions of the complaint Underwriters moves to strike are not "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). To the extent Underwriters argues that certain allegations are irrelevant because the Policy does not provide coverage for the cost of pursuing a cross complaint, the Court finds that such an argument is better addressed on a motion to dismiss. Accordingly, the Court DENIES Underwriters' motion to strike paragraphs 17a through 23b, the second and third sentence of paragraph 24, paragraphs 26 through 28, the third sentence of paragraph 29, paragraphs 29a through 29g, the third sentence of paragraph 31, paragraph 32, and paragraphs 50 through 50n from the complaint.

### 2. Prayer for Punitive Damages

Underwriters asserts that plaintiff has failed to allege facts sufficient to support a prayer for punitive damages, and accordingly, its prayer for such damages should be stricken. Mot. at 23–24. Underwriters argues that the facts in the complaint portray a dispute over the percentage of costs allegedly incurred in the Torrance litigation that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA         O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

plaintiff claims should have been paid by Underwriters. Id. at 24. Underwriters contends that the allegations in the complaint do not come close to rising to the level of reprehensible conduct which would warrant imposition of punitive damages. Id.

Plaintiff responds that its damages arise from Underwriters alleged failure to respond to the tender of the Session's Cross Complaint, refusal to reimburse plaintiff for defense costs after October 2006, and four years of delay in responding to plaintiff's request for reimbursement. Opp'n at 19. Plaintiff argues that the complaint contains factual allegations showing that Underwriters acted with oppression, malice or fraud in breaching its duty to defend and the covenant of good faith and fair dealing. Id. at 20 (citing Complaint ¶¶ 46–50, 59, 60, and 63–65). Accordingly, plaintiff contends that the Court should not strike its request for punitive damages. Id.

Underwriters replies that plaintiff's prayer for punitive damages should be stricken because plaintiff cannot "manufacture a breach of the covenant claim by inserting itself between insurer and defense counsel, thereby attempting to turn a fee dispute into a bad faith action." Reply at 14.

On the present record, the Court declines to strike plaintiff's prayer for punitive damages because the allegations in the complaint, if proven, may support a finding that Underwriters acted with oppression, malice or fraud in breaching its duty to defend and the covenant of good faith and fair dealing. See Cal. Civ. Code § 3294. Accordingly, the Court DENIES Underwriters' motion to strike plaintiff's prayer for punitive damages from the complaint.

**IV. CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS Underwriters' motion to recuse Burns as plaintiff's counsel. The Court hereby DENIES Underwriters' motion to strike, and DENIES Underwriters' motion to dismiss as moot.

IT IS SO ORDERED.

00   :   15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA            O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8581 CAS (Ex) | Date | January 3, 2011 |
|---|---|---|---|
| Title | SYNOD OF SOUTHERN CALIFORNIA AND HAWAII v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; ET AL. | | |

Initials of Preparer        CMJ